Are the parties ready to proceed? Yes, Your Honor. The appellants are ready to proceed. Yes, Your Honor. All right. Appellant, you may proceed. May it please the Court. Good morning. My name is Erin Brewer, and with Akin Gump, I represent the Appellants Center for Inquiry and two of its members, Arthur Brayton and Eric McCutcheon, pro bono in this matter. This Court has long recognized that the First Amendment protects not only an individual's right to practice the religion of his choice, but also the right to be free from the practice of religion altogether. The Texas marriage law at issue here today violates this principle because it denies appellants all of the benefits of a marriage ceremony solely because they have chosen to exercise their constitutional right to be free from the practice of religion. But the Court does not actually need to reach the merits of this claim today because the issue on appeal is more straightforward. Do appellants' allegations of discriminatory treatment plausibly state a claim for relief so that this case may proceed past the pleading stage? There are two points that I will address today. The first is that the district court correctly found that appellants have standing to bring their claims because discriminatory treatment is a long-recognized concrete injury. The second is that the district court improperly dismissed appellants' establishment. We've lost audio. Ms. Berla? Good morning. I apologize. All right. You may begin again. I will start with the standing issue here today. There are three reasons why the district court correctly found that appellants have standing to bring their claims. The first is that appellants have alleged discriminatory treatment, which is an injury that has long been recognized as concrete. Again, this injury is concrete rather than symbolic. And third, this injury has already occurred or is certainly impending. I want to ask you a question. Who are the intended beneficiaries of this statute? Of this statute, Your Honor? Yeah, I would have thought that it was people who want to get married. The statute perpetuates an injury here on both the couples that would like to get married as well as the celebrants. And we have alleged an injury here on behalf of both. We have the individual appellants here, Arthur Brayton and Eric McCutcheon, who are secular celebrants and have been injured by this statute. But we have also alleged associational standing for CFI on behalf of its member couples. So you are correct, Your Honor. The couples here are a beneficiary of the statute, and we have alleged an injury to the couples as well. Which couples? The member couples. The complaint has alleged that CFI has members who are couples who would like to be married by a CFI secular officiant, but they are prohibited under the statute from doing so. I understand that. My question is, who are the couples? The complaint states that couples have asked Arthur Brayton and Eric McCutcheon to perform marriage ceremonies. And the law at this stage, because we are considering standing at the pleading stage, does not require CFI to identify any particular couple at this stage. Says which case? That would be the court's decision in Texas Cable and Telecommunications Network, which was a Fifth Circuit case. There, the court stated that they were not required to identify any particular member at the pleading stage who had been injured by the alleged injury. Yeah, but they had to allege the specific franchise contracts that were impugned by the state action. Let me ask it this way. In Lujan, you're familiar with the facts in Lujan? Yes, Your Honor. So could the plaintiffs in that case have pled an injury at the motion to dismiss stage or the petition for review stage without identifying the endangered species? I think that this case is distinguishable here, Your Honor, because, again, we have alleged that Arthur Brayton and Eric McCutcheon have actually been approached by particular couples who would like for them to be married by CFI secular celebrants, but they're prohibited by law from doing so. Additionally, even absent the injury to the couples, we have alleged an injury here to CFI secular celebrants who are discriminated against based on the fact that they do not affiliate with a religious organization under the law. Here they are treated similarly, or they are similarly situated to religious officiants who have gone through their organization's training to become able to solemnize marriages, but because the Texas law does not allow secular organizations to participate in this manner, the appellants are not able here to solemnize marriages under the law. And this is a concrete injury. The Supreme Court has recognized in Northeastern Florida, Chapter of Associate General Contractors v. City of Jacksonville, that discriminatory treatment under the law, where a law erects a barrier that makes it more difficult for one group to receive a benefit than for another group, this is a concrete injury. Further, this injury is not purely stigmatic. It is a concrete injury here because the CFI celebrants have actually been excluded from a benefit provided by the state on the basis that they have chosen to exercise their constitutional right to be free from the practice of religion. And this is a concrete benefit. This is not a symbolic benefit. Further, the appellants here did not actually have to expose themselves to prosecution in order to have standing for this injury to be eminent. Before we talk anything about prosecution, how do you have any basis to complain about the risk of the Class A misdemeanor charge where you haven't sued anybody who could prosecute you? There are a couple of reasons why we have standing here based on the allegations against the clerk himself. The first is that the standing inquiry requires that an injury be traceable and redressable to the defendant that you have sued. The statute directly charges the clerk with carrying out the discriminatory treatment. And the discriminatory treatment is the injury that we've alleged here. There are multiple mechanisms in the statute for carrying out this discriminatory treatment. One is the criminal penalties. The other is the clerk's conduct in being charged with rejecting or accepting marriage licenses signed by unauthorized persons. So the clerk here is traceable to the injury, and the injury here is redressable by an award against the clerk. Completely understood. My point is there's no injury with respect to criminal prosecution. You can't complain about the risk of the Class A misdemeanor charge if you haven't sued the person who would charge you with the Class A misdemeanor. Respectfully, Your Honor, the cases that the state cites in support of this proposition are distinguishable for a couple of reasons. The first is that most of those cases, many of those cases deal with sovereign immunity, which don't address the issues of traceability and redressability. The second is that those cases, the plaintiffs there have not sued anyone charged in the statutory scheme with perpetuating the injury involved. For example, in Okepelobee, that statute involved a private right of action, and they had sued the governor and the attorney general who had no involvement in the enforcement. Here, we have sued the clerk who is directly charged with enforcing the statute by either rejecting or accepting licenses. If an award against the clerk determines that the secular celebrants here can no longer be treated as unauthorized, this makes it much less likely that there would be any prosecution by the DA. So the injury here is redressable by an award against the clerk who has been named in the statute. Turning to the Establishment Clause inquiry here. Before we move on to standing, I have a hypothetical question for you. Suppose I really wanted to have my marriage officiated by my high school principal and my high school principal really, really wanted to do it. Would my high school principal have standing to challenge the statute under the Establishment Clause? No, Your Honor, this situation is different for a couple of reasons. The first is that we aren't advocating here that anyone off the street should be able to have standing to challenge this law or should be even permitted under the law to authorize marriages. The difference here is that appellants have alleged that they have been discriminated against based on their ability to exercise a constitutional right, and that is the right to be free from the practice of religion. I'm saying me and my high school principal have the same right, don't we? We don't want to have one of the enumerated one, two, or three sectarian officiants. I would like to get married, and I would like my high school principal to officiate it, and I would like to be free from religion the same way you would. Would my high school principal, with me as a supporter, have standing to challenge the law under the Establishment Clause? If the issue there was that your high school principal has the deeply held beliefs that the appellants do have here, that they do not believe in affiliating with a religion, then they very well may have standing. However, there is a distinction here, and that is that the law requires that there be a serious interest in engaging in the conduct that is prohibited by statute. Here, that is what makes appellants different, because they do have a serious interest in engaging in the conduct prohibited by the statute, and that is demonstrated by the fact that they have actually completed CFI's training, which requires not only the training to become a secular celebrant, but also that they submit interviews and recommendations in order to become a certified secular celebrant. Anyone who wants to have a marriage officiated by a secular officiant would have standing to challenge this under the Establishment Clause. It has to be true. Yes, Your Honor. If it is based on their deeply held beliefs, then that is true. The issue here is that the law discriminates based on deeply held secular beliefs, which the Seventh Circuit recognized and the Center for Inquiry v. Marion are akin to a religious belief in this instance. The law, again, is clear that an individual has a right to be free from the practice of religion, and that the First Amendment protects this right to the same extent that it protects religious beliefs. Well, you mentioned the Marion Circuit Court clerk case, and in terms of addressability, you didn't bring in this case any claim against the county prosecutor. Is that right? No, Your Honor, we did not. But again, the injury here is redressable by an award against the clerk here, because the clerk is the one charged in the statute with rejecting or accepting licenses based on unauthorized persons. But that doesn't mean the county prosecutor couldn't go forward with prosecution, does it? It makes it much less likely that the county prosecutor would prosecute a person who the clerk is under an order to accept as an authorized person under the statute. You'll agree that in your city, in your Center for Inquiry case in Indiana, you sued the county prosecutor? Yes, Your Honor. The prosecutor was sued in that instance. But you didn't do that in this case? No, Your Honor. But again, for the reasons discussed, the injury here is redressable by the clerk who is directly charged in the statute with discriminatory treatment. And what was different about Indiana that you brought in the prosecutor and didn't do it here? Respectfully, Your Honor, I was not involved in the Indiana case. That was a separate law firm handling that case. But again, the injury here is redressable by an award against the clerk, because the clerk is charged under the statute with carrying out the discriminatory treatment. And the state has not cited any case that stands for the proposition that every person charged under the statute or who might perpetuate the injury must be sued in order to have standing. Instead, what the law requires is that the injury be traceable to the defendants that are sued and that the injury be redressable by an award against the people that are sued, which again, for the reasons explained, that is the case here. I'd like to very briefly address the Establishment Clause issues here. The District Court incorrectly dismissed the Establishment Clause claims for several reasons. First, the American Legion Supreme Court case is not applicable in this instance, because this is not a public practice or monument case. Second, even if American Legion did apply, that is a fact-intensive inquiry that should not have been resolved on a motion to dismiss. The American Legion case was a case where the Supreme Court declined to strictly apply the Lemon Test in a First Amendment case that dealt with a public monument that had religious symbolism in it. Again, this case is unique to the public monument setting, and both the Third and the Eleventh Circuit have held that American Legion only clearly disregards lemon as it applies to public practices and public monuments. This is not a public practice or monument case. What we have here is a law that regulates purely private conduct. It regulates private conduct, private marriage ceremonies between private individuals on private property. This is not a public monument case, and so American Legion does not apply here. But even if American Legion did apply, this is a very fact-intensive inquiry, and it should not have been resolved on a motion to dismiss as a matter of law. American Legion itself was determined after a motion for summary judgment, and subsequent Circuit Court cases applying American Legion have also resolved these issues on a motion for summary judgment. Other courts have recognized that establishment causes are inherently fact-intensive. Those that rely on history, such as American Legion, are inherently fact-intensive and should not be resolved on a motion to dismiss generally, but generally deserve a full development of the record. And this court has also held in Lytle v. House and Thompson v. Waco that where an inquiry is fact-intensive, it generally should not be resolved at the motion-to-dismiss stage. Here… Counsel, could we fix the establishment cause problem as you understand it by deleting the first three subsections of the statute? So the only mentions of religion are in A1 for Christian ministers, A2 for Jewish rabbis, and then A3 for any other religious organization. If we just had a magic blue pencil and could strike all that out, would it fix the establishment cause problem? Yes, Your Honor. It would have no addressability because you still wouldn't be able to – the Center for Inquiry still wouldn't be able to officiate a marriage. The issue here, Your Honor, is we're not asking for any religious organization to be deleted from the statute. All we're asking is for secular officiants and couples to have an avenue to have a marriage ceremony that reflects their beliefs, which the statute here does not provide because it limits the private options for officiants to only religious ministers and religious organizations. Again, we're not asking for anyone to be removed from the statute. All we're asking for is an avenue for secular officiants and couples to be able to participate in a marriage ceremony that reflects their beliefs, which, again, the Seventh Circuit has recognized are akin to religious beliefs in this instance. Finally, the last point I'd like to address here is that we're not asking the court to reach the merits of the claim either. All that is being asked here is that the district court – or that this court affirm the district court's ruling that appellants have standing to bring their claims and dismiss not only the – or reverse the dismissal of not only the Establishment Clause claims but all of the constitutional claims so that we – that there may be discovery and so that we may reach the merits of the claim in the district court. Thank you. Thank you, counsel. Ms. Hacker? Good morning. May it please the court, Heather Hacker for the Dallas County Clerk. Texas' marriage solemnization law reflects 200 years of tradition. The law includes both religious and secular options, and humanist couples are free to marry in Texas in a ceremony that contains no religious overtones. It is of no constitutional concern that these options do not satisfy the plaintiffs, and there is no legal basis for this court to rewrite Texas law as the plaintiffs demand. The district court's dismissal of the meritless claims here was correct, but plaintiffs' case suffers from a more fundamental threshold defect because they lack standing. I'd like to make a few quick points on standing to follow up with some of the issues that the court highlighted just a minute ago. First, even if plaintiffs alleged a sufficiently concrete injury, there is a causation problem here because the plaintiffs sued only the Dallas County Clerk, yet failed to allege that any member of CFI or couple wants to apply for a marriage license in Dallas County. There are 254 counties in Texas. So even if the clerk would deny a humanist a marriage license based on their choice of solemnizer, we don't know from the complaint that that's actually causing anyone an injury. But I would also point out that that's not clear from the statute. The statute only gives the clerk the duty to record the marriage. There is no duty under Texas law for the clerk to investigate the credentials of the individual who signs the marriage license. So there is no, as the court highlighted, not only is there no causation here, but there's no redressability. And as the court highlighted also, the plaintiffs did rely on criminal penalties. You're saying the clerk's only duty, Ms. Hacker, the clerk's only duty is to record the marriage? Is that what you said? Yes, under state law, Your Honor. That's Texas Family Code Section 2.208. And so if CFI, if one of the CFI celibates performed a ceremony, you're saying the clerk would just record it? I'm saying that the statute does not give the clerk a duty to investigate it. It seems to me that from reading the statutes together, the fact that there would be a criminal penalty means that the investigative responsibility would go to the DA, who, as the court has pointed out, has not been sued here. And to whom does the criminal penalty apply? I believe it applies to the officiant, Your Honor. So the clerk would not be penalized at all if the clerk simply recorded the marriage? That's my understanding, yes, Your Honor. Moving on to redressability, this court cannot bind defendants that are not before this court, as the court recently just said in Henry Abbott. At most, this court could bind only the Dallas County clerk with an injunction. But again, since we don't know from the complaint that there is anyone who would submit a marriage license to the Dallas County clerk, that injunction would be meaningless. Further, even if there is a couple that would apply for and submit a marriage license in Dallas County, an injunction cannot redress the harm of prosecution because it would not bind any DAs. And because, for the simple reason that if the court enjoined the clerk to record the marriage, that doesn't stop the DA from bringing charges for performing marriage outside the statute. Finally, the type of relief that the plaintiffs are asking for here. My opponent just mentioned that they are basically asking for their own category here. They're not arguing that they belong in either category that the statute creates. They're not arguing they belong in the religious category. They're not arguing that they belong in the civil official category. They want their own category, which is basically asking this court to rewrite the law. And to respond to that argument, I would point the court to a case, Ward v. Commissioner of Internal Revenue, which is 608 F. 2nd. 599. It's a Fifth Circuit case from 1979. In that case, this court held that there's no standing for a taxpayer objecting to a religious tax exemption and wanting one of their own based on a philosophic belief. Unless the court has further questions about standing, I'd like to move on to the merits. Even if the court were to find that the plaintiffs have standing, the district court was still correct in determining that they failed to state a claim. Since I have limited time here, I'm going to just focus on the Establishment Clause claim and the Equal Protection Clause, of course, unless the court has questions. But to start with the Establishment Clause, plaintiffs contend that the Texas marriage solemnization law violates the Establishment Clause because in allowing religious celebrants to solemnize marriages, it endorses religion or gives a benefit to religion. But Supreme Court precedent shows that this is false. First, as the Supreme Court held yesterday in Espinoza, there is no argument under the Establishment Clause that a neutral program that gives a benefit to religion is unconstitutional. Now, as we argued in our brief, I think it makes more sense to view this, if anything, as an accommodation rather than a benefit. But ultimately, that question doesn't really matter because this is a historic practice that is consistent with the Establishment Clause. The Supreme Court in town of Greece held that the Establishment Clause must be interpreted by reference to historical practices and understandings. It rejected the idea that legislative prayer is only constitutional because it's historic, instead clarifying that the Establishment Clause itself must be interpreted in light of history. If the practice here was permitted contemporaneously with the Establishment Clause's ratification, or if there's a long history of allowing that, it cannot be said that the Establishment Clause bars the practice. In our brief, we demonstrated the lengthy tradition in this country and in Texas itself of permitting religious officiants and state officials to solemnize marriages for purposes of state recognition, and that tradition dates back hundreds of years. The plaintiffs had no substantive response to this argument, other than arguing that historical analysis of legal tradition requires discovery in expert testimony, which is just demonstrably false. As the Supreme Court's decision in Espinoza yesterday illustrates. There, the court engaged in lengthy historical analysis and did not cite to the record or the joint appendix. It cited to original sources and scholarly articles, which this court is also quite capable of doing. The fact that plaintiffs really had no substantive response to that point, I think, really decides the question here. As American Legion and Town of Greece made clear, where a governmental religious practice is steeped in long tradition and recognizes the important role that religion plays in many people's lives, as the law issue here does, it cannot be said that that practice establishes religion or endorses religion in violation of the Establishment Clause. I want to make one more note about the Establishment Clause here. The District Court arrived at the right destination, but used the wrong road to get there by applying the Lemon Test. A majority of the Supreme Court, six votes, has rejected lemon in the context of displays, symbols, and practices, and this court should explicitly recognize that and not apply lemon in this case. However, even if lemon does apply, as we explained in our brief, the law still meets the test because it has a clear secular purpose, it doesn't have the primary effect of advancing religion, and it does not involve entanglement. Moving on to the Equal Protection Clause. The only way that the plaintiffs can state a claim under the Equal Protection Clause is if no reasonably conceivable state of facts can provide a rational basis for the law. Plaintiffs argue that the law is irrational because non-religious officiants may not solemnize marriages, but people who obtain online ordinations can. But this argument fails for two reasons. First, the plaintiffs appear to be judging these – actually, let me back up. The first point I would make is that as to the argument about these online ordinations, this is a fact that is not alleged in the complaint. The complaint contains no allegations about anyone else who is allowed to solemnize marriages. So that's a primary point there. But moving on to what I was saying a second ago, the plaintiffs appear to judge these individuals who become ordained through an online source as somehow insincere or hypocritical. But that kind of judgmental attitude is not appropriate for the state who's prohibited from parsing the sincerity or the substance of the religious beliefs of individuals. That Texas does not root out all marriages performed by officiants it deems insincere or not religious enough is a free exercise virtue, not an Establishment Clause vice. It goes back to the roots of the Establishment Clause in forbidding denominational preference. The second reason is that the law is clearly rational, as the district court found. It's based on the idea that marriage is an important commitment and that it should be a solemn occasion. It should be a ceremony. That is a tradition that's reflected over hundreds of years of history. And it's also the idea that either religious or civil authority should solemnize that ceremony just goes back to the idea that those types of authorities are exercising authority over the couple. Now a religious couple would believe that the religious authority has primary authority over them. A couple without a religious commitment is subject to state authority. And so it makes sense for those two categories to be allowed to solemnize marriages. There's just simply no argument that this law is irrational and so plaintiffs have failed to state an equal protection claim as well. Unless the court has any questions, I'll wrap it up here. The plaintiffs lack standing and their claims should be dismissed for lack of jurisdiction. But even if the court agrees that their allegations are sufficient for standing, they are insufficient to state claims as the district court found. Either way, the court should affirm the dismissal of this case. Thank you. Thank you, Counsel. Ms. Brewer. Thank you, Your Honor. There are three points that I would like to address here quickly. The first is regard to standing. Again, the injury here that is alleged is discriminatory treatment under the law. And there are two mechanisms that the statute uses for imposing this discriminatory treatment. One is the clerk's conduct in accepting or rejecting licenses signed by unauthorized officiants. The second is the criminal penalties. Even absent the criminal penalties, there is still discriminatory treatment under the law that is traceable and redressable to the clerk. So these are independent injuries or independent mechanisms for imposing the injury here, which again is the discriminatory treatment. Secondly, the state references Espinoza, which was the Supreme Court's decision yesterday. This case is inapplicable for a couple of reasons, the primary of which is that it was a free exercise case rather than an establishment clause case. So it applied different standards here than what is applied here. Further, to the extent that this court does, what is interested in the holding in Espinoza, we do intend to file a 28-J letter reply addressing the state's letter that was filed late yesterday afternoon. Finally, with regard to the state's historical argument on the establishment clause claims, the Supreme Court has never held that history may remedy an otherwise unconstitutional practice or serve as an independent basis for upholding a unconstitutional practice. Secondly, as the district court found, the history here actually shows that the state historically permitted a wider array of secular officiants, including secular couples, the couples themselves, sea captains, and notaries public. So to the extent that history does play a role in this analysis, the district court found that history actually permitted a wider array of secular officiants than what is allowed currently under the Texas marriage law. For these reasons, we ask that you affirm the district court's finding that the appellants have standing and reverse the dismissal of all of the appellant's constitutional claims so that this case may proceed to the merits. Thank you. All right. Thank you, Counsel. The court will take this matter under advisement and we are adjourned for the day.